THE STATE, EX REL. GEORGE ZIMMERMANN, v. THE TOWNSHIP COMMITTEES OF THE TOWNSHIPS OF BERGEN AND BOILING SPRINGS, BERGEN COUNTY.

1. Townships are not obliged to work an abandoned turnpike, unless it was originally laid upon a highway.
2. Such duty will only arise if the road is laid out as a highway, or, perhaps, if accepted as a highway by a township committee.

On rule to show cause why a writ of *mandamus* should not go to the township committee of the township of Bergen and the township committee of the township of Boiling Springs, both in the county of Bergen, commanding them to make application to the Court of Common Pleas for the appointment of commissioners to ascertain what part of a public road dividing said townships shall be worked by each of the respective townships.

Argued at February Term, 1894, before Justices DEPUE and REED.

For the relator, *Addison Ely.*

For Bergen township, *Campbell & De Baun.*

The opinion of the court was delivered by

REED, J.    It is admitted that there has been for a great number of years an old road dividing the two townships. It is admitted that this road is now almost impassable. It is therefore claimed by the relator that the duty is imposed upon each of the respective township committees to proceed under section 63 of the Road act (*Rev., p.* 1008) to have the road apportioned to the respective townships.

The first objection urged by the township of Bergen is that the duty of working the said road has been transferred from that township to another municipal corporation known as the

village of Carlstadt, one side of which village borders on the said road.

I think this objection is without substance. If we assume that the territorial limits of this village run to the middle of this road, there is nothing in the feeble corporate powers conferred upon this nondescript municipality which strips the township of its powers or relieves it of its duties to treat this road as any other highway, if it is a highway. The power conferred upon the village over streets was only in respect to sidewalks.

A supplement to the original act conferring this power over sidewalks was passed in 1864 (*Pamph. L., p.* 770), and professed to confer broader powers, but its operation was confined by its title to sidewalks. So, in all other respects, the control over streets or highways remained in the township authorities. I therefore find no substance in this objection.

There is, however, a difficulty presented which, I think, stands in the way of the relator.

The evidence in respect of the evolution of this piece of road is not clear, and from it I am unable to find that any duty to work this road rests upon either of the respective townships. As I understand the evidence, the fragment of road in question was originally a part of a road constructed under an act to incorporate a company to extend the Paterson and Hamburgh Turnpike to the Hudson river. *Pamph. L.* 1816, *p.* 130. The company was to be known as the New Barbadoes Toll Bridge Company. The act provided for a survey and map of a four-rod road to be filed in the secretary of state's office. The frame of the act indicates that the route was then to be first used as a highway, and there is nothing in the case to show that the part now involved had any previous existence.

In 1831 (*Pamph. L., p.* 304) the New York and Paterson Plank Road Company was chartered. The act, in section 8, gave this company power to construct a plank road, to commence at some suitable place in the town of Paterson to one

or more places on the Hudson river, opposite the city of New York.

This new company, in some unexplained way, seems to have succeeded the former company in the control of this road.

In 1854 a detour around the base of a hill was built, and the part over the hill—the road now involved—was abandoned by the company.

An act obviously intended to legalize this departure from the route filed by the company, was passed in 1864.    *Pamph. L., p.* 560.    From about 1854 the part of road in question was abandoned by the company as a part of their plank road, and it has been subject to such uses as, lying open, it would obviously invite.

No work upon it has, so far as appears, been done or been ordered done by the township officers.    Reparations have, in some instances, been made by citizens residing in Carlstadt.

In view of these facts, the inquiry arises in what way any legal duty has devolved upon the township officers to work this road.

The Road act (*Rev., p.* 1011, § 87) provides that, in case a turnpike which has been laid upon a public road shall be abandoned and the company shall suffer the same to become out of repair, it shall be the duty of the overseer of the township, &c., to repair it.

But this abandoned road was not a part of a public road upon which the original toll road was laid.    So the road was not within the words of the act, and the express words of the section imposing the duty of working abandoned turnpikes laid upon highways excludes the notion that any such duty exists in respect to abandoned turnpikes not originally so laid. The *status* of a road-bed left in such a predicament, is anomalous.    The weight of authority, and I think rightly, is in favor of the view that such a way cannot be closed against the public.

The public authorities having control over the opening, and, perhaps, those authorities having the control of the

working of roads, can take this roadway and apply it to public uses as a highway. Neither the company nor its assignee, nor any owner of the land originally taken, can interpose a denial of the right of the public to use it, or of those representing the public to appropriate it. *Ell. Roads & S.* 55.

I treat plank roads as standing upon the same footing as turnpikes, as in principle there can be no difference.

The *status* of such a road is somewhat similar to a dedicated road or street before it is accepted. There having been no laying out of this way as a highway, and there having been no acceptance by the township authorities, no duty rests upon them to work it.

I may say that a release made by the plank road company to the authorities of the town of Carlstadt appears in the case. It purports to release and give over to such authorities all control over this strip of road. But it has no importance, in the view already expressed of the position of the townships in respect to the road.

It may be observed that Carlstadt was not equipped to receive such a grant, and if she were so equipped, she, standing for the company, has practically abandoned the road.

The rule to show cause is discharged.